## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VIVIAN PERCOCO, | : | |
| *Plaintiff*, | : | CIVIL CASE NUMBER: |
| | : | |
| v. | : | 3:14-cv-01122-VLB |
| | : | |
| LOWE'S HOME CENTERS, LLC, | : | September 22, 2016 |
| *Defendant*. | : | |


### MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Vivian Percoco brings this employment discrimination action against her former employer, Defendant Lowe's Home Centers, LLC.  She raises claims for race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a-60 *et seq.*; claims for age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and CFEPA; and claims for interference and retaliation in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*[1]  Defendant moves for summary judgment on all claims.  The Court grants the motion and enters judgment in favor of Defendant.

---

[1] Plaintiff also brought a discrimination claim under the Americans with Disabilities Act of 1990.  ECF No. 1 at ¶¶ 92–94.  This claim was dismissed at the pleading stage.  ECF No. 31.

## Background

The following facts, which are undisputed unless otherwise noted, are drawn from the record.[2]  Plaintiff is Hispanic, is of Puerto Rican descent, and was over the age of forty at all relevant times.  ECF Nos. 1 (Compl.) at ¶ 16; 37 (Answer) at ¶ 16; *see* 42-9 (Pl. Depo.) at 129:16–21.  Plaintiff worked as the Human Resources Manager for Defendant's Danbury store from 2006 until 2013.  ECF Nos. 1 (Compl.) at ¶¶ 15, 19, 39; 37 (Answer) at ¶¶ 15, 19, 39; 42-10 (Jewell Depo.) at 12:15–19.  Her immediate supervisor in 2013 was Area Human Resources Manager Svetlana Jewell née Baranova, who is neither Hispanic, Puerto Rican, nor over the age of forty.  ECF Nos. 1 (Compl.) at ¶ 21; 37 (Answer) at ¶ 21; 42-10 (Jewell Depo.) at 5:15–20.  Jewell's immediate supervisor was Human Resources Director Luis Rivera, who is Hispanic, is of Puerto Rican descent, and was over the age of forty in 2013.

---

[2] Local Rule of Civil Procedure 56(a)1 requires "a concise statement of each material fact" and each fact to be supported by admissible evidence.  At several points, Defendant fails to comply: Defendant fails to cite any admissible evidence, *see* ECF No. 42-3 at ¶¶ 7, 38, 42; and Defendant sets forth sprawling paragraphs containing numerous assertions of fact, *see id.* at ¶¶ 9, 24–25.  These errors, however, do not necessitate the denial of summary judgment because a jury trial would be waste of resources.  *See Voccola v. Rooney*, 136 F.Supp.3d 197, 201 n.1 (D. Conn. 2015) (granting summary judgment despite defendants' failure to comply with Local Rule of Civil Procedure 56(a)).

Plaintiff fairs no better.  Local Rule of Civil Procedure 56(a)2 requires a party opposing summary judgment to state "whether each of the facts asserted by the moving party is admitted or denied."  Plaintiff, at various points, fails to admit or deny facts and instead states that she has "no knowledge."  ECF No. 45-2 at ¶¶ 23, 28, 33–35, 41.  The Court deems those facts admitted because "no knowledge" is a noncognizable response. *See* Loc. R. Civ. P. 56(a)1.  Plaintiff also denies two facts but fails to support those denials with a citation to "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial," as required by Local Rule of Civil Procedure 56(a)3.  ECF No. 45-2 at ¶¶ 40, 49.  The Court deems those facts admitted as well.  *See* Loc. R. Civ. P. 56(a)1.

ECF No. 42-2 (Rivera Aff.) at ¶¶ 2–3, 5.   Members of the Human Resources Department, including Plaintiff, are not trained to investigate complaints of gender discrimination and harassment.   ECF No. 42-10 (Jewell Depo.) at 30:8–18, 35:3–9. Given the potential for legal liability, Defendant's Employee Relation Department are specifically trained to investigate these claims.   *Id.* at 35:10–18.

On March 31, 2013, Plaintiff sustained face and chest injuries from a car accident.   ECF No. 42-9 (Pl. Depo.) at 13:2–20.   That night, she informed the night manager of Defendant's Danbury store that the car accident prevented her from coming to work the following week.   *Id.* at 15:13–16:10.   A few days later, Plaintiff also informed Jewell, and Jewell told Plaintiff "to take it easy and just keep in contact with [Plaintiff's] coordinator."   *Id.* at 16:11–25.   Plaintiff used four paid sick days, *id.* at 17:22–18:8; ECF No. 42-10 (Jewell Depo.) at 10:9–14, and never received nor requested any type of FMLA documentation, ECF No. 42-9 (Pl. Depo.) at 18–21. Plaintiff returned to work on Monday, April 8, 2013.   *Id.* at 13:24–14:9.

The Friday evening before Plaintiff's return, Kayla Fleming, a store employee, emailed Store Manager Angelo Resso and Plaintiff.   ECF No. 42-5 (Email).   Fleming's email states, in relevant part, that "[Manager Samir Feratovic] told me on multiple occasions that because he is a man and we are women that men are superior to women in every way therefore he is above me."   *Id.*   When Plaintiff returned to work the following Monday, Resso informed Plaintiff that a number of employees including Fleming had submitted written statements concerning sexual harassment, but Resso did not provide any specific details. ECF No. 42-9 (Pl. Depo.) at 19:4–20:2.   Plaintiff read Fleming's email that Monday

afternoon, *id.* at 22:5–7, and the following day Resso provided Plaintiff with the three written complaints, *id.* at 20:10–12.  The complainants alleged that Feratovic had made statements that he does not listen to women, that woman are beneath him, and that men are superior to women.  ECF Nos. 6–8 (Written Statements).  Lisa LeBreque, a store employee, also complained to Plaintiff, but the parties dispute whether this occurred on Monday or Tuesday.  ECF No. 42-9 (Pl. Depo.) at 25:9–13.

On Tuesday, April 9, 2013, Plaintiff spoke with Feratovic, ECF No. 42-9 (Pl. Depo.) at 34:2–5, but the parties dispute whether Plaintiff took a written statement from Feratovic, *compare id.* at 105:9–15, *with* ECF No. 42-10 (Jewell Depo.) at 81:2–6 ("Percoco had explicitly stated . . . that she did not collect a statement from [Feratovic].").  Feratovic admitted that the complaints were accurate.  ECF No. 42-9 (Pl. Depo.) at 35:5–10.  He further stated that he should not joke that way because women are "mostly emotional and sensitive."  *Id.* at 44:6–7.  Plaintiff believed that Feratovic was just "joking around."  *Id.* at 45:12–15.  Plaintiff also thought that she "stopped the behavior" by telling Feratovic that he "couldn't really be friendly with his subordinates," *id.* at 35:17–22, 112:18–20, and she blamed the incident on Feratovic's national origin, *id.* at 31:25–32:1 ("[I]t's his personality.  I'm just saying that's German.").  But on April 13, one of the complainants informed Plaintiff that Feratovic retaliated against her.  ECF No. 42-9 (Pl. Depo.) at 125:17–21.

Plaintiff informed Jewell of the complaints of gender discrimination a week after Plaintiff first learned of them.  ECF No. 42-9 (Pl. Depo.) at 105:20–22.  On the following day, Jewell told Rivera because members of the Employee Relation Department, not the Human Resources Department, are specifically trained to and

charged with investigating claims of gender discrimination and harassment.  ECF No. 42-10 (Jewell Depo.) at 30:8–18, 35:3–9; 35:10–18.   In light of the problems caused by Plaintiff's unsupervised investigation, Rivera ordered Jewell to look into the issue, and Jewell learned that one of the complainants intended to call Defendant's hotline because the claims of discrimination went unabated.  *Id.* at 37:21–38:7.

Rivera also tasked Jewell with ascertaining why Plaintiff waited to immediately report the incident after returning to work, as Plaintiff was required to do, and Plaintiff said she believed that she had addressed the complaints herself. ECF No. 42-10 (Jewell Depo.) at 31:14–32:25.  Rivera then decided to terminate Plaintiff's employment for failing to immediately report the incident, and Jewell agreed.  *Id.* at 74:22–75:8.  On April 25, 2013, Jewell informed Plaintiff that she was being fired because she failed to promptly notify Jewell of the complaints of gender discrimination after Plaintiff learned of those complaints when she returned to work.  ECF No. 42-9 (Pl. Depo.) at 117:3–17.  Defendant replaced Plaintiff with a female employee who was over the age of forty, but the record does not demonstrate whether the replacement was younger, Hispanic, or Puerto Rican. ECF No. 42-10 (Jewell Depo.) at 44:7–45:10.   Defendant concedes that the replacement was neither Hispanic nor Puerto Rican.  ECF No. 42-1 (Mem.) at 11.

Plaintiff believes that the failure to discharge Resso shows race, national origin, and age discrimination, as well as FMLA retaliation.  ECF No. 42-9 (Pl. Deop.) at 131:1–5.  Resso is white and younger than Plaintiff, *id.* at 128:15–18, but the record does not indicate whether Resso is Puerto Rican.  Resso was not in the

Human Resources Department, is not a human resources professional, and has no reporting relationship to Jewell and Rivera.  ECF No. 42-10 (Jewell Depo.) at 16:2–17:12.  Resso received one complaint of discrimination on Friday evening, and he reported the incident the following Monday.  ECF No. 42-9 (Pl. Depo.) at 19:14–15, 117:22–24.  According to Jewell, Resso was not disciplined because a less-than-five-day delay in reporting was not inappropriate given that Plaintiff, his supervisor, would be returning to work on the following Monday.  ECF No. 42-10 (Jewell Depo.) at 14:16–15:1, 44:2–3.

Plaintiff believes that the failure to discharge Michael Velez, Defendant's Derby Store Human Resources Manager, illustrates age discrimination as well as FMLA retaliation.  ECF No. 42-9 (Pl. Depo.) at 128:22–24.  Velez is both Hispanic and of Puerto Rican descent but younger than forty.  ECF No. 42-11 (Velez Depo.) at 23:14–24.  In May 2013, Velez received a complaint that a male store manager used the "f" word when scolding a male employee.  *Id.* at 28:18–19, 57:11–15; ECF No. 42-10 (Jewell Depo.) at 56:8–13.  The complaint was not based on any claim of discrimination.  ECF No. 42-10 (Jewell Depo.) at 73:1–10.  Velez informed Jewell of the alleged incident two or three days later.  ECF No. 42-11 (Velez Depo.) at 63:17–18.  Velez received a final warning, the last disciplinary step before being discharged, for failing to immediately report the incident.  ECF No. 42-10 (Jewell Depo.) at 72:4–7.

Plaintiff also believes that she was the victim of age discrimination because another unidentified store manager was allegedly fired six months before Plaintiff was terminated.  ECF No. 42-9 (Pl. Depo.) at 141:15–142:25.  But other than vague

rumor, the record contains no evidence either delineating or substantiating this allegation.  Plaintiff further testified that her claim for age discrimination was based on the fact that she and another employee over the age of forty generally felt uncomfortable around Jewell and that Jewell treated them with condescension.  *Id.* at 126:10–15.   Plaintiff cannot remember any specifics as to why she felt uncomfortable around Jewell, and Plaintiff does not recall Jewell ever making any age-related comments to her or any other employee.  *Id.* at 127:15–19, 128:9–11.

## Discussion

### I.   Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine factual disputes exist.  *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A plaintiff opposing summary judgment "cannot defeat the motion by relying

on the allegations in [her] pleading . . . or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). "At the summary judgment stage of the proceeding, [a plaintiff is] required to present admissible evidence in support of her allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (citing *Gottlieb*, 84 F.3d at 518); *see Martinez v. Conn. State Library*, 817 F.Supp.2d 28, 37 (D. Conn. 2011).  A plaintiff opposing summary judgment must produce more than "a 'scintilla of evidence'"— that is, the evidence sufficient for "'a jury to properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Fincher v. Depository Trust & Clearance Co.*, 604 F.3d 712, 726–27 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251–52).

## II.   <u>Race and National Origin Discrimination Claims</u>

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, and national origin.  42 U.S.C. § 2000e-2(a)(1).  CFEPA similarly proscribes employment discrimination based on race and national origin.  Conn. Gen.Stat. 46a-60(a)(1).  The statutes employ slightly different language but are read coextensively.  *State v. Commission on Human Rights and Opportunities,* 211 Conn. 464, 470 (1989)*.*  The claims are evaluated under the three-part, burden-shifting standard set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Preston v. Bristol Hosp.*, 2016 WL 1253872, at *1 (2d Cir. Mar. 31, 2016); *Vogel v. CA, Inc.*, 2015 WL 7428928, at *2 (D. Conn. Nov. 20,

2015) ("Title VII and CFEPA race and national origin discrimination claims are analyzed under identical legal standards.").

A plaintiff must first show: "(1) that [she] belonged to a protected class; (2) that [she] was qualified for the position [she] sought; (3) that [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251–52 (2d Cir. 2014). Once a plaintiff makes such a showing, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). If the employer cites a proper explanation, the plaintiff must show pretext. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). "Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (internal quotation marks and citations omitted). The ultimate question on summary judgment is whether "the employee's admissible evidence [ ] show[s] circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Defendant does not dispute that the record contains sufficient evidence of a *prima facie* claim of race and national origin discrimination. ECF No. 42-1 (Mem.)

at 10–11.   Defendant instead adduces this nondiscriminatory reason for terminating Percoco's employment: instead of promptly notify her supervisor about the discrimination claims, Percoco launched her own inquest, exacerbating Defendant's liability exposure.  *Id.* at 11–12.  Plaintiff argues that this explanation is pretext, not that Defendant failed to meet its burden of proof.  *See* ECF No. 45-1 at 23–26.  The issue is thus whether Plaintiff's admissible evidence would permit a rational finder of fact to infer discriminatory motivation.   It would not.

Plaintiff contends the following "evidence" demonstrates pretext: (1) her good-faith effort to resolve the incident without involving her supervisor; (2) her lack of prior disciplinary issues; (3) LHC's failure to engage in progressive discipline; (4) a replacement who was neither Hispanic nor Puerto Rican; and (5) a store manager who was allegedly subjected to the same workplace standards and engaged in comparatively serious conduct but who was not fired and was neither Hispanic nor Puerto Rican.  ECF No. 45-1 at 24–26.

Her first four pieces of "evidence" are insufficient to survive a motion for summary judgment.   Plaintiff's rationalizations for conduct prohibited by her employer are immaterial.  *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) (ruling that defendant entitled to summary judgment where plaintiff offered only "disputations [that] were rationalizations for his deficiencies rather than demonstrations of any genuine issue of material fact to be tried").   Similarly, Plaintiff's lack of prior disciplinary issues and Defendant's failure to engage in progressive discipline may be harsh, but the severity of the punishment alone does not suggest that the reasons for firing her were unworthy of belief or that she was

the victim of race or national origin discrimination.  *See Kaplan v. Multimedia Entm't, Inc.,* 2008 WL 686774, at *7 (W.D.N.Y. Mar. 10, 2008) ("While the consequence of termination for the violation of the driving policy may have been harsh, plaintiff has offered no proof of retaliatory animus or evidence of pretext."); *but see Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 81 (2d Cir. 2015) (Chin, J. dissenting) (relying on district court precedent ruling that "harsh punishment coupled with positive employment record supports finding of pretext").  And even assuming that this type of evidence could demonstrate pretext, her "evidence" lacks support in the cited record and thus cannot defeat summary judgment.  *See Koonce v. Gaylord Hosp., Inc.*, 2015 WL 4603414, at *6 (D. Conn. July 30, 2015) ("A party's bald assertion, completely unsupported by evidence, is not sufficient to overcome motion for summary judgment.").  Finally, Defendant's admission concerning the replacement's race and national origin may be relevant, but this admission alone cannot defeat summary judgment.  *See Blanke v. Rochester Tel. Corp.*, 36 F.Supp.2d 589, 597 (W.D.N.Y. 1999) ("Replacement by a person of a different race may suffice to make out the fourth element of a *prima facie* case under Title VII, but without additional evidence of discriminatory intent, it is insufficient at the summary judgment stage.").

Plaintiff's claims for race and national origin discrimination thus depend on whether she can identify a similarly situated employee of a different race or national origin who was treated differently from her.  But evidence concerning Resso does not raise a question of fact for the jury.  A similarly situated employee must be subject to the same workplace standards and engage in comparably serious

11

conduct.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).  Here no reasonable jury could find the store manager to be similarly situated.  *See Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("[A] court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.").

Plaintiff and the store manager were not subject to the same workplace standards because they had different jobs and job duties.  *See Reyes v. New York State Office of Children & Family Servs.*, 109 F. App'x 466, 467 (2d Cir. 2004) (affirming dismissal of discrimination claim on summary judgment because the plaintiff and comparator "had a totally different job and a totally different set of responsibilities").  Plaintiff, who worked in Human Resources, was specifically tasked with reporting discrimination claims.  Resso, on the other hand, was not in the Human Resources Department, was not a human resources professional, and had no reporting relationship to Jewell and Rivera.

In addition to being subject to different workplace standards, Resso did not engage in comparatively serious conduct.  Resso reported the claims of gender discrimination in less than one full business day; Plaintiff waited approximately a week before reporting the incident.  Another key difference lies in the circumstances underlying the failure to report.  Resso waited to report the incident because it occurred late in the workday on Friday and because the person to whom he was obligated to report the incident was not present and was scheduled to return to work on Monday, the following business day.  Resso did nothing in the interim.  Plaintiff, on the other hand, conducted her own investigation in addition

to failing to report the incident.  She did this despite lacking the training to conduct discrimination investigations; indeed, she was specifically prohibited from doing so.  And during her discussion with Feratovic, Feratovic made a blatantly sexist remark.  Rather than reporting the incident at that point, Plaintiff shrugged off Feratovic's sexist remark characterizing it as a "cultural misunderstanding"—that is, she stereotyped all German men as sexist and washed her hands of the whole affair by instructing Feratovic not to befriend subordinates.  So, not only did she fail to report the incident, she made the situation worse: the claimants added a retaliation claim to their arsenal.   Given these material differences between the conduct of Plaintiff and Resso, no reasonable juror would find them to be comparable.  Without a comparator, Plaintiff lacks sufficient evidence to raise a triable question of fact.  The Court thus enters summary judgment in favor of Defendant on Plaintiff's federal and state claims for race and national origin discrimination.

III.    <u>Age Discrimination Claims</u>

The ADEA prohibits an employer from discriminating against an employee "because of" her age.  29 U.S.C. § 623(a)(1).  CFEPA likewise proscribes age discrimination in employment.  Conn. Gen.Stat. 46a-60(a)(1).  Both claims are evaluated under the burden-shifting framework from *McDonnell-Douglas*. *Rubinow v. Boehringer Ingelheim Pharm., Inc.*, 496 F. App'x 117, 118 (2d Cir. 2012). At the first step, the plaintiff must produce evidence tending to show:  "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action

occurred under circumstances giving rise to an inference of discrimination." *Gorzymki v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (citation omitted).

Defendant moves for summary judgment on the basis that Plaintiff cannot point to evidence showing that she was fired occurred under circumstances giving rise to discrimination.  ECF No. 42-1 at 15–18.  Plaintiff identifies the following "evidence": (1) her replacement, who was over the age of forty; (2) water-cooler talk about an unnamed human resources manager who was terminated or let go; (3) her and her colleague's subjective feelings of discrimination; (4) Resso, the store manager, who waited the weekend before notifying the proper supervisor; and (5) Velez, a human resources manager, who reported an incident involving the "f" word two or three days later.  ECF No. 45-1 at 15–19.  Based on this evidence, a reasonable juror could not infer circumstances suggesting age discrimination.

Defendant first argues that Plaintiff cannot produce evidence that her replacement, who was also over the age of forty, was significantly younger than Plaintiff.  ECF No. 42-1 at 16.  Plaintiff contends that Defendant failed to put forth evidence that Plaintiff's replacement was not substantially younger.  ECF No. 45-1 at 15.  This dispute concerns the standards governing summary judgment and thus is easily resolved.  When a nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Defendant has discharged its duty by showing that Plaintiff, who has been afforded a full and fair

opportunity for discovery, has not produced any evidence concerning her replacement's age. Plaintiff cannot defeat summary judgment by relying on her failure to confirm unsubstantiated hunches during discovery. *See Henry v. Metro. Transp. Auth.*, 2014 WL 4783014, at *13 (S.D.N.Y. Sept. 25, 2014) ("Plaintiff, after failing to request these materials during discovery, cannot now point to their absence as evidence. . . .").

A similar problem arises with Plaintiff's second piece of evidence—that is, some unnamed employee was the victim of age discrimination. Defendant argues that "[t]hat assertion is based on rumor or gossip, not admissible evidence. Moreover, by the plaintiff's own admission, she has no idea of the circumstances or reasons that this unidentified Store Human Resources Manager, according to the scuttlebutt, purportedly was either removed or terminated by [Jewell]." ECF No. 42-1 at 18. Plaintiff does not explicitly challenge this argument, merely referring to this "evidence" in her opposition. ECF No. 45-1 at 19 ("Plaintiff also testified that another older HR manager was terminated or let go by [Jewell] about six months before she was."). Unsubstantiated gossip cannot defeat survive summary judgment. *Crawford v. Dep't of Investigation,* 324 F. App'x 139 (2d Cir. 2009) (affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations"). Defendant discharged its burden by pointing to the absence of evidence, and Plaintiff fails to counter with any appropriate evidence.

Plaintiff also purports to raise an inference of discrimination by relying on her and her colleague's subjective feelings of age discrimination. ECF No. 45-1 at at 18–19. But this too does not constitute evidence. *See Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 456 (2d Cir. 1999) (ruling that the plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination"). Importantly, Plaintiff testified that she cannot identify any specific incident suggesting age discrimination and cannot remember any time when Jewell made comments relating to her or another employee's age. This "evidence" of discrimination thus amounts to nothing.

Plaintiff has only two remaining pieces of evidence to suggest discrimination: her alleged comparators. ECF No. 45-1 at 16–18. But for the reasons stated above, no reasonable juror could find Resso to be a relevant comparator. This leaves only Velez, who also worked as a Human Resources Manager and was thus subject to the same workplace standards as Plaintiff. But no reasonable juror could find that Velez engaged in comparatively similar conduct. The incidents underlying each employee's failure to report bear no similarity. Velez failed to report a single incident involving a cuss word. Plaintiff, on the other hand, failed to report multiple claims of discrimination. Plaintiff also had a greater duty to report because the underlying incidents involved serious legal liability, the rationale underlying Defendant's reporting policy. And her misguided attempt to ameliorate the problem was ineffective: Feratovic was unyielding, making made a sexist remark during the conversation in which she confronted him with the complaint.

16

Plaintiff and Velez also engaged in different conduct in the interim. Velez failed to take action; Plaintiff continued to violate work policy by launching her own investigation, making a bad situation worse by creating a retaliation claim. Finally, Plaintiff waited a week before reporting the incident; Velez waited only two or three days before doing so. Given these material discrepancies, no reasonable juror could compare the two. Plaintiff can point to no other evidence suggesting an inference of age discrimination.

Plaintiff also cannot show that Defendant's supported, age-neutral explanation was pretext. Under the ADEA, Plaintiff must ultimately show but-for causation.[3] *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 167 (2009). Under CFEPA, this Court applies the motivating-factor test. *See Asante-Addae v. Sodexo, Inc.*, 2015 WL 1471927, at *23 (D. Conn. Mar. 31, 2015), *aff'd*, 631 F. App'x 68 (2d Cir. 2016). Under either standard, Plaintiff lacks sufficient evidence to warrant a trial. She fails to show a *prima facie* claim of discrimination, so she cannot demonstrate pretext by relying on her *prima facie* case. She also fails to offer any evidence that Defendant's explanation for terminating her employment was pretext. Her evidence of pretext—that is, rationalizations for her conduct and unsupported allegations that she was treated harshly—fails for the reasons explained above. The Court enters summary judgment on the age discrimination claims.

---

[3] Plaintiff, who is represented by counsel specializing in employment law, appears to be unaware of the legal standard articulated by Supreme Court over seven years ago. *See* ECF No. 45-1 at 9 ("The plaintiff can satisfy this burden by demonstrating that his race, age, and/or national origin as well as defendant's retaliation was a motivating or substantial factor in the adverse employment actions she faced.").

IV.   <u>FMLA Claims</u>

The FMLA provides an "eligible employee" with the right to take twelve weeks of unpaid leave for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).   The FMLA prohibits employers from interfering with this right and from retaliating against an employee who asserts this right.   29 U.S.C. § 2615.   Interference and retaliation claims are two district claims for relief.   *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

Plaintiff asserts both interference and retaliation claims.   The basis for her interference claim is this: "Defendant failed to notify the plaintiff whether the leave had or had not been designated as FMLA leave within five (5) days of when the defendant had enough information to determine whether the plaintiff's leave was FMLA qualifying."   ECF No. 1 at ¶ 72.   Plaintiff was indeed entitled to prompt notification, 29 C.F.R. § 825.300(b)(2), but Defendant's failure to notify her does not constitute the denial of a benefit necessary to state an interference claim unless the failure "affected the employee's leave, benefits, or reinstatement," *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999).

Defendant argues that the interference and retaliation claims should be addressed together because the lack of notice prevented Plaintiff from invoking FMLA's anti-retaliation protections.   ECF No. 42-1 at 20.   In other words, the claims rise and fall together because Plaintiff cannot demonstrate the prejudice necessary to state an interference claim if her retaliation claim fails.   Plaintiff does not address this argument and states that the failure to notify her "prejudiced her," citing only

to her complaint alleging "[b]y failing to notify and designate plaintiff's leave as FMLA-qualifying leave, plaintiff was prejudiced." ECF No. 45-1 at 20–21 (citing ECF No. 1 at ¶ 76). In the absence of any explanation as to why Defendant's reading of Plaintiff's interference claim is incorrect, the Court addresses only the retaliation claim, ruling that the interference claim fails because the retaliation claim fails.

FMLA retaliation claims have been analyzed under the *McDonnell-Douglas* test, but the proper legal standard has not been resolved. *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 n.7 (2d Cir. 2016). The Court applies *McDonnell-Douglas* because Plaintiff does not argue for the application of the test articulated in *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1125 (9th Cir. 2001). ECF No. 45-1 at 6, 22. Under this standard, a *prima facie* claim requires proof of the following elements: "1) [she] exercised rights protected under the FMLA; 2) [she] was qualified for his position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza*, 365 F.3d at 168.

Defendant argues that Plaintiff cannot point to evidence showing that she was fired under circumstances giving rise to an inference of retaliatory intent. ECF No. 42-1 at 22. And while Plaintiff fails to raise the argument, the temporal proximity between her FMLA-qualifying leave and the termination of her employment is sufficient to suggest a retaliatory motive at the *prima facie* stage. *See Weichman v. Chubb & Son*, 552 F.Supp.2d 271, 289 (D. Conn. 2008) (ruling that employee's termination approximately one month after exercising her rights to medical leave protected under FMLA was sufficient in temporal proximity to establish causal

connection).  Defendant, however, correctly notes that temporal proximity alone is insufficient to survive a motion for summary judgment at the pretext stage.  *See id.*; *cf. El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").

There is some dispute among courts concerning the legal standard governing the pretext stage of an FMLA retaliation claim.  *See Matye v. City of New York*, 2015 WL 1476839, at *18 (E.D.N.Y. Mar. 31, 2015) ("The causation standard that Plaintiff must satisfy at the pretext stage is currently an open question in this circuit.").  The Court applies the claimant-friendly, motivating-factor test because it does not alter the outcome.  The only evidence not already discussed that Plaintiff can offer to support her claim of pretext is that Defendant's stated reason for terminating her employment was failing to report an incident while on leave. But, as the parties do not dispute, this was not the stated reason for disciplining Plaintiff.  This was the reason: the delay between April 8—that is, the day Plaintiff learned of the complaint after returning to work—and April 15—that is, the day Plaintiff reported the incident to Jewell—frustrated Defendant's anti-discrimination initiates by preventing the immediate input of the Employee Relations Department investigators.  *Compare* ECF No. 42-3 at ¶ 25, with ECF No. 45-2 at ¶ 25.  Because there is no evidence that Plaintiff was being fired for a reporting delay attributable to her FMLA-qualifying leave, her retaliation claim fails as a matter of law.  The

Court thus enters summary judgment for Defendant on Plaintiff's interference and retaliation claims.

<u>Conclusion</u>

The Court grants Defendant's motion for summary judgment on all remaining claims.  The Clerk's Office is directed to enter a separate judgment in favor of Defendant and close this file.


IT IS SO ORDERED.

                                    _____/s_____
                                    **Vanessa L. Bryant**
                                    **United States District Judge**


Dated at Hartford, Connecticut: September 22, 2016.